IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

FILED
MAY 24 2001

ANNA SHELTON AND WALTER MONROE KING,
INDIVIDUALLY, AND AS CO-ADMINISTRATORS OF THE ESTATE
OF TROY KING; AND MARTHA HOLMAN, LINDA KINDER,
GARY KING, PHYLLIS CAMPBELL, AND LORIE KING         PLAINTIFFS

VS.                    NO. CIV-2001- 166 SMR

OFFICER MARVIN VANOVEN, INDIVIDUALLY, AND IN HIS
OFFICIAL CAPACITY AS DEPUTY SHERIFF OF
JACKSON COUNTY; OFFICER JESSIE BRASWELL OF THE CITY
OF SWIFTON, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY;
CHIEF OF POLICE, JIM BUTTS, INDIVIDUALLY, AND IN
HIS OFFICIAL CAPACITY AS CHIEF OF THE SWIFTON POLICE
DEPARTMENT; THE CITY OF SWIFTON; AND, THE COUNTY OF
JACKSON                                              DEFENDANTS

## COMPLAINT

Come now the Plaintiffs, and for their cause of action against the Defendant state and allege as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of the Court over this civil rights action is instituted under 42 U.S.C. § 1983 and under 28 U.S.C. § 1331 and 1343 (a)(3).

2. Venue is properly laid in the Eastern District of Arkansas pursuant to 28 U.S.C. §1391(b).

3. This civil rights action regarding the death of Troy King and the numerous violations of his civil rights were the cause in fact and proximate cause of his death, and is instituted under the United States Code Title 42, USC, Section 1983 and Title 28 USC Section 1331 and 1343(a)(3).

1

**PARTIES**

3. The Plaintiffs in this cause of action are the heirs at law of the decedent, Martha Holeman, sister; Linda Kinder, sister; Walter Monroe King, brother; Phyllis Campbell, sister; and, Lori King, wife. All of these individuals are residents of the City of Swifton, County of Jackson, State of Arkansas. The Plaintiffs, Anna Shelton and Gary King are residents of the City of Jonesboro, County of Craighead, State of Arkansas. In addition to the above referenced Plaintiffs, the Estate of Troy King is also a Plaintiff, having this cause of action filed in its own capacity for all elements of damages that the Estate is entitled to under Arkansas law.

4. Specifically, the Estate is suing for pecuniary loss to the heirs at law, pain and suffering prior to Troy King's death, disfigurement prior to his death, and any and all elements under Arkansas law that Troy King would be entitled to in addition to his death itself. In addition, the heirs at law that would be entitled to pecuniary damages as a result of his death are seeking damages as a result thereof and they are seeking damages for mental anguish caused by the premature and unnecessary death of Troy King. The Probate Court setting forth the Co-Administrators of the Estate is dated February 15, 2001, and a copy of the Order appointing the Co-Administrators is attached hereto as Exhibit "A".

5. The Defendant, Chief of Police, Jim Butts, is being sued in his individual and official capacity. At all times relevant to the allegations made in this Complaint, he was acting under color of State law as the Chief of Police of the City of Swifton, County of Jackson, State of Arkansas.

6. The Defendant, Officer Jessie Braswell, is being sued in his individual and official capacity and was at all times relevant to the allegations made in this Complaint, acting under

thirty minutes and then found him three and one-half days later when the family asked if they were looking for him. When they did find him, he was laying face up in a fish pond, having drowned after falling into said pond unable to use his arms although struggling in an attempt to release himself from the handcuffs placed upon him by the individuals that made it impossible for him to escape the deadly pond.

## FACTS

12.   On or about the 29th day of September, 2000, at approximately 10:30 p.m., Troy King had stopped at The Bushwhacker Bar, near Swifton, Arkansas, in Jackson County. Troy King was married to Lorie King and was an independent truck driver. While he was at the premises of The Bushwhacker, he was served beverages and eventually was refused any more beverages because he had reached the point of not being able to stand, falling down, and totally unable to control his movements, and the owner refused to serve any other beverages because of his obvious drunken state.

13.   After leaving The Bushwhacker, the Plaintiff's decedent, Troy King, attempted driving his eighteen wheeler but did not get very far. He had a minor traffic accident in the parking lot of The Bushwhacker. Why the individuals at The Bushwhacker even permitted him to leave, knowing of his condition, is unimaginable, however, it seems to happen every day. Regardless, shortly after Troy King left the premises, he was placed under arrest for DWI by Deputy Sheriff Vanoven of Jackson County. At the time this arrest was made, Deputy Marvin Vanoven, handcuffed Troy King behind his back and took him to the rear of his police car, leaving him in the custody, at least he thought he was leaving him the custody, of Swifton Police Department Office Jessie Braswell and Swifton Chief of Police, Jim Butts.

color of State law and as a police officer employed by the City of Swifton, State of Arkansas.

7. The Defendant, Jackson County Deputy, Marvin Vanoven, is being sued in his individual and official capacity and at all times relevant to the allegations made in this Complaint, acting under color of State law.

8. The Defendant, City of Swifton, is a municipal corporation duly organized and incorporated under the laws of the State of Arkansas.

9. The Plaintiff allege that at the time of the arrest and detention and the custodial relationship that was placed upon the Plaintiff's decedent, Troy King, the City of Swifton, by and through its official policy makers, and specifically, the Chief of Police, Jim Butts, breached their duties regarding said custodial setting and regarding an appropriate search.

10. The Defendant, Jackson County, is a political subdivision of the State of Arkansas. At the time of the allegations made in this Complaint, it was acting by and through its employees and these employees were caring out the corporate decisions of the Sheriff's Office and therefore, were caring out the policy of Jackson County regarding the treatment of individuals in a custodial relationship and the proper search technique to be made of an individual that they have lost through their own mistakes when the individual is totally inebriated, unable to walk, falling down, and is handcuffed behind his back.

11. The facts surrounding the loss of custodial relationship in this case would be comical were in not for the fact that it resulted in the death of Troy King. The search in this case is beyond the bounds of imagination. Counties and cities search for dogs and cats more than they searched for Troy King, a human being, left close to a highway and within a quarter of a mile of a pond, handcuffed behind his back, totally inebriated and searched for him for approximately

3

14. For whatever reason, Officer Braswell being the primary officer and the only officer that had placed Troy King, a pre-trial detainee, in a custodial relationship, under arrest, under his control and handcuffed behind his back, failed to put him in his police car in order to provide for his safety. Instead of making sure that this man that he was now responsible for was placed in a position of safety and/or a place not close to a heavily traveled highway or not close to an area where this man could be harmed or potentially suffer irreparable harm, he simply left him outside with two other officers that he assumed were taking care of Mr. King.

15. To make a long matter short, Officer Braswell and Chief of Police James Butts, left Troy King handcuffed, at approximately midnight, in a basically unlit dark area, somewhere behind Officer Vanoven's vehicle without ever telling Office Vanoven. Officer Vanoven was in the process of making a phone call, or taking care of other business, the two other officers walked away, and left Troy King a pre-trial detainee, under their custody without any supervision, in a highly inebriated state, handcuffed, and in an extremely dangerous situation considering the traffic in the surrounding area and the fact that Troy was barely able to stand and obviously was mentally not functioning normally.

16. What follows seems natural. Troy made his living as a commercial truck driver and was literally scared to death because he knew that if he got a DWI he would lose his privileges to make a living. All of the officers either knew or should have known of this but it does not make any difference. They left him alone, highly intoxicated and he walked away. After he walked away, you would think that an extensive manhunt with bloodhounds, would have begun. However, that is not what happened. Once all of the officers from the City of Swifton and the County of Jackson found out that he was gone, they piddled around for about

thirty minutes asking some people if they had seen him and called off the search.

17. All during this time, Troy King we now assume, was walking, stumbling, falling, making his way to his death. Approximately one-quarter mile from where he was left, he stumbled his way into the pond that he was unable to extricate himself from, even though he was an excellent swimmer. The marks can still be seen by the photographic evidence that was gathered by the Arkansas State Police in their investigation of this potential crime. Shortly after the family had gone to the Sheriff's Office requesting that they might consider looking for their brother since he had been gone since Friday night and it was Sunday, however, no search was necessary because the man that owned the little pond just called to let them know that Troy was floating face down in his pond with the handcuffs still on.

18. After the initial investigation was done by Jackson County and by the City of Swifton Police Officers, it was immediately turned over the Prosecuting Attorney, Stewart Lambert. Stewart Lambert immediately notified the State Police and initiated a criminal investigation. The coroner's report filed by the Arkansas State Crime Lab, found the cause of death, drowning, and the manner of death, accident. They indicated in the autopsy that "the diagnosis of drowning is one of exclusion, with the autopsy ruling out natural disease or traumatic causes of death and it is highly dependent on the investigation of the circumstances. In the present case, the circumstances indicate accidental immersion into the pond with subsequent drowning".

19. The autopsy further found that "at initial examination, handcuffs were present around the wrists, low on the left wrist.....and high on the right wrist. The hands were shifted over toward the right back.....there was deep patterned furrowing of the left wrist...".

6

## CAUSES OF ACTION

20. The Plaintiffs set forth that the Defendant's, each and every one, are responsible for the death of Troy King. Their actions were the cause in fact and the proximate cause of the death of Troy King and their violations of his civil rights were violations that all occurred under color of State law.

21. Deputy Sheriff Vanoven, Officer Braswell, and Chief of Police Butts, who were all acting under color of State law, were all involved in placing Troy King in a custodial relationship. They all were jointly and/or individually working and responsible for detaining Troy King in arresting Troy King, handcuffing Troy King, detaining Troy King, all knowing that he was highly intoxicated, unable to walk, and they knew that Troy King was so inebriated by drink, that he could not protect himself from obvious dangers or otherwise take care of himself. These officers actions were reckless and showed an utter reckless disregard for the rights of Troy King. As a consequence of the knowledge these officers had, as well as the fact that Troy King had been taken into custody, a special relationship was created between the Defendants and Troy King. This special relationship was that the Defendants, above mentioned, that is, the officers involved in the initial arrest procedure, owed Troy King a duty to protect him from the danger situation they knowingly and affirmatively created and to take reasonable preventive steps to diffuse this danger and not to act recklessly so that an individual that is in their custody would be harmed.

22. The Defendants breached these duties in a reckless and intentional manner when they left Troy King alone, unsupervised, at the rear of the patrol car, knowing the condition that he was in and after he escaped, as unbelievable as it may sound, prematurely calling off the search

and leaving him to fend for himself until he found in the pond by the owner of the farm on Sunday afternoon.

23. In addition, the City of Swifton and the County of Jackson, are both responsible regarding the actions of their officers in the fact that the Chief of Police of Swifton being the Chief judicial officer of said city, sets the official policy of said city and in this case, not only failed and was reckless in his actions regarding the custodial relationship of Troy King, but also was reckless and showed a callous disregard for Troy King's rights in calling off the search before it even really began and never really beginning the search until the phone call from the farmer indicated that he was laying face down in the farmer's pond. The same allegations can be and are made against Jackson County in their failure to search, their intentional calling off of said search, whether because they were mad or whatever the reason could be, and whether the Arkansas State Police investigation really uncovered all of the reasons involved. This premature calling off of the search and no search thereafter, is a reckless and intentional violation of Troy King's rights and of the United States Constitution, the due process clause of the Fourteenth Amendment, and Title 42 §1983 and 1988 of the United States Code.

## DAMAGES

24. The Estate requests damages from the Defendants for any and all expenses related to Troy King's death, all of the elements of damages set forth in the State of Arkansas that Troy King would be entitled to that occurred as a result of the pain and suffering that he endured, his mental anguish, and the terrible suffering that it must have been falling into the pond, fighting to get the handcuffs off, and gradually losing his last breath.

25. The heirs at law request that they receive pecuniary damages where appropriate and

mental anguish for the loss of their loved one, Troy King.

26. Plaintiff's reserve their right to amend this Complaint at a later time to include additional facts and/or damages.

WHEREFORE, premises considered, Plaintiffs pray and request judgment against the Defendant for damages in excess of $5,000,000; attorneys fees and costs under 48 USC §1983 and 1988(b); and for the right to amend their pleadings at a later date; and for all other relief to which they may be entitled to in the premises.

Respectfully submitted,

By: *[signature]*
David Rees (79238)
Attorney for Plaintiffs
USDC#79238

Rees Law Firm
P.O. Box 1573
Jonesboro, AR 72401
(870) 972-1100

By: *[signature]*
Scott Willhite (91093)
Attorney for Plaintiffs

Orr, Scholtens, Willhite & Averitt, PLC
P.O. Box 1267
Jonesboro, AR 72403
(870) 972-1500